UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


NICHOLAS MARTELLO                    )
                                     )
            Plaintiff                )     CIVIL ACTION NO.
                                     )     1:13-cv-13089-DPW
       v.                            )
                                     )
UNITED STATES,                       )
                                     )
            Defendant.               )


MEMORANDUM AND ORDER
March 18, 2016

Plaintiff Nicholas Martello brings this case under the

Federal Tort Claims Act.  He alleges that, while he was in

federal custody after a violation of the terms of his supervised

release, the United States failed to provide him with adequate

medical care for a defective wire in his knee, causing him to

suffer pain and damages in the amount of $10,000.  I denied a

motion to dismiss when the government alleged inadequate service

of process.  *Martello* v. *United States*, 2015 WL 5680327 (D.

Mass. Sept. 25, 2015).  Following completion of discovery, the

United States now moves for summary judgment.  It contends that

the level of care that it provided to Martello was adequate, and

that Martello has provided no evidence or expert opinion to find

otherwise.

## I. BACKGROUND

### A.   *Factual Background*

Martello underwent knee surgery at Massachusetts General Hospital in October of 2011.  A few months later, in January of 2012, he saw a different doctor for a follow-up visit where he discussed the possibility of removing a wire that was put into his knee during the original surgery.  Martello and the doctor specifically discussed the possibility of removing the wire at a later visit, but left it in place for the time being.

On February 9, 2012, Martello was found to have violated the conditions of his supervised release on a prior federal sentence.  He was taken into custody on February 15, 2012 and transferred to a federal Bureau of Prisons facility in Brooklyn, New York.  At that facility, he was prescribed a painkiller for his knee as a result of an initial medical evaluation.  After a few weeks at the facility, Martello had a full medical exam, at which he did not complain of knee pain.

On May 31, 2012, Martello was transferred to another Bureau of Prisons facility, this one in Otisville, New York, where he was given another initial medical evaluation, during which his knee was not mentioned.  On June 14, 2012, Martello saw Dr. Sommer, the clinical director at Otisville.  He mentioned pain in his knee, which he thought was a result of a broken wire from his surgery.  Dr. Sommer ordered an x-ray of the knee and made a

note to schedule a consultation with an orthopedic doctor if the x-ray showed that the wire was broken.  The x-rays did not show any evidence of a broken wire in Martello's knee; consequently, a consultation was not scheduled at that time.

On July 30, 2012, Martello had another physical exam, at which a doctor noticed mild swelling in his knee, but no physical evidence of a broken wire.  The doctor requested Martello's surgery records from MGH and requested that an appointment be made for Martello to see an orthopedist.  This request was provisionally approved on August 10, 2012, but needed further approval from the Regional Medical Director responsible for the area's federal prison facilities.  Martello had another exam at Otisville on September 25, 2012, during which the doctor noticed physical signs of a defective wire in his knee.  On November 2, 2012, Martello had a consultation with Dr. Daniil Polishchuk, an orthopedic specialist who recommended removing the wire.  On December 5, 2012, Martello filed an administrative claim with the Bureau of Prisons, complaining that he had not yet had a procedure to remove the wire, despite Dr. Polishchuk's recommendation.  On December 20, 2012, Dr. Polishchuk performed a procedure to remove the wire from Martello's knee.  Martello was released from federal custody shortly thereafter, when the term of his incarceration ended on January 22, 2013.

Martello's administrative claim was denied on June 4, 2013.
The denial cited the fact that Martello had in fact ultimately
had the procedure to remove the wire, and that he had suffered
no compensable loss due to BOP negligence.  On December 4, 2013,
Martello filed a claim in this court seeking $10,000 in damages,
alleging inadequate and negligent medical care provided by the
United States, or, more specifically, by the BOP through its
medical staff.  Fact discovery closed on July 31, 2015.
Plaintiff's expert disclosures were due on September 4, 2015,
those of the defendant due on October 2, 2015, and depositions
of both to be completed by October 30, 2015.  Plaintiff,
however, disclosed no expert opinion in support of his claim.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c).  A
"genuine" dispute is one that, based on the evidentiary
material, a factfinder "could resolve . . . in favor of the non-
moving party," and a "material" fact is one that has "the
potential to affect the outcome of the suit under the applicable
law."  *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)
(citations and quotation marks omitted).  When reviewing a
motion for summary judgment, I view the facts "in the light most
favorable to the non-moving party."  *Zambrana-Marrero v. Suarez-*

4

*Cruz*, 172 F.3d 122, 125 (1st Cir. 1999).  If the moving party

satisfies the burden of showing, based on evidentiary material,

that there is no genuine issue of material fact, the burden

shifts to the nonmoving party to demonstrate by reference to

other evidentiary material "that a reasonable jury could return

a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  *See Celotex Corp. v. Catrett*,

477 U.S. 317, 324 (1986).  "[C]onclusory allegations, improbable

inferences, and unsupported speculations" are insufficient to

establish a genuine dispute of fact.  *Medina-Munoz v. R.J.*

*Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

### III. ANALYSIS

**A.   *Mootness***

The United States contends that, because Martello

ultimately received the necessary knee surgery, his claim is

moot because he is no longer suffering an injury.  It is of

course true that Article III requires a live case or controversy

for a district court to assert jurisdiction.  *See Steffel* v.

*Thompson*, 415 U.S. 452, 459 n. 10 (1974) ("The rule in federal

cases is that an actual controversy must be extant at all stages

of review, not merely at the time the complaint is filed.")  But

Martello here asserts a claim for damages, not injunctive

relief.

Martello also asserts that his claim entitles him to damages in the amount of $10,000 to be paid by the United States under the Federal Tort Claims Act.  *See* 28 U.S.C. § 2674.  If it is determined that the care provided to Martello while in federal custody was negligent, he may be entitled to damages as a result.  This means that there is still a live case or controversy.  Because Martello still has an active interest in the determination of this suit, and still has a cognizable injury capable of remedy under the FTCA, his case is not moot.

**B.   FTCA Claim**

Under the FTCA, whether or not the United States is liable for a tort claim is to be determined by "the law of the place where the act or omission occurred," and the United States is to be treated like a "private person" for determination of liability.  28 U.S.C. § 1346.  Essentially, "the FTCA specifically provides that the federal government's tort liability is co-extensive with that of a private individual under state law."  *Proud* v. *United States*, 723 F.2d 705, 706 (9th Cir. 1984).  In this case, the alleged tort occurred entirely within New York State, so I will apply New York law to determine whether or not the United States is liable.

The plaintiff's claim rests upon the accusation that he was the victim of medical malpractice at the hands of BOP physicians.  In New York State, in order to prove a claim for

medical malpractice, the plaintiff "must prove (1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries." *Milano by Milano* v. *Freed*, 64 F.3d 91, 95 (2d Cir. 1995); *see also Vale* v. *United States*, No. 10-CV-4270 (PKC)(LB), 2015 WL 5773729 at *2 (E.D.N.Y. Sept. 30, 2015).  In satisfying the first prong, "[i]t is well established in New York law that 'unless the alleged act of malpractice falls within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of malpractice.'" *Sitts* v. *United States*, 811 F.2d 736, 739 (2d Cir. 1987) (quoting *Keane* v. *Sloan-Kettering Institute for Cancer Research*, 96 A.D.2d 505, 506, 464 N.Y.S. 548, 549 (N.Y. App. Div. 2d 1983)) (citations omitted).

In *Sitts*, the plaintiff faced a situation similar to the one at issue in the instant case.  Sitts underwent a spinal procedure at a VA hospital in Syracuse, New York.  During the first procedure, the physicians removed tissue from the wrong segment of his spine.  The doctors realized their mistake after further testing, and remedied it with a corrective surgery almost a year later.  Sitts brought a case against the doctors, alleging medical malpractice under a theory of negligence.

7

Sitts did not offer any expert testimony.  The United States moved for summary judgment claiming that New York law requires that a plaintiff produce expert testimony on the grounds of causation and negligence in order to establish a prima facie case for medical malpractice.  Sitts maintained that the fact that his operation was performed at the wrong site was evidence enough for a lay jury to conclude that he was treated negligently without expert testimony.

The District Court granted the United States' motion for summary judgment and dismissed the case.  The Second Circuit Court affirmed, focusing on the general rule in New York that, unless an instance of malpractice would appear as such to a lay jury, expert testimony is necessary to establish the appropriate medical standard.  In New York, "[i]n order to show that the defendant has not exercised ordinary and reasonable care, the plaintiff ordinarily must show what the accepted standards of practice were and that the defendant deviated from those standards. . . ."  *Id.* at 739-40 (citations omitted).  The Court observed that this requirement "is imposed in part because 'without expert assistance a jury will often have no understanding of what constitutes reasonable behavior in a complex and technical profession such as medicine.'"  *Id.* at 740 (quoting *Paul* v. *Boschenstein*, 482 N.Y.S.2d 870, 872, 105 A.D.2d 248, 249 (N.Y. App. Div. 2d 1984) (abrogated on other grounds)).

The Second Circuit recognized that there are cases in which malpractice is so obvious that an ordinary lay jury will be able to recognize it, such as "where a dentist pulled the wrong tooth," or "where the surgeon saws off the wrong leg." *Id.* (citing *Wenger* v. *Mollin*, 264 N.Y. 656, 191 N.E. 611 (1934); quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 32, at 189 (5th ed. 1984)). But even for those cases, expert testimony "may be required to prove that the negligence was the proximate cause of the injury complained of." *Id.* As a general proposition, "in the view of the New York courts, the medical malpractice case in which no expert medical testimony is required is rare." *Id.* (citation omitted). As a consequence, the Second Circuit concluded that "[w]here [expert] evidence is not proffered, the defendant is entitled to judgment as a matter of law . . . by means of . . . the granting of a motion for summary judgment in opposition to which the plaintiff fails to come forward with such evidence." *Id.* (citations omitted).

I find here that the amount of time that is standard in the community for someone to receive medical treatment for a non-life-threatening knee surgery is not within the general knowledge of a lay person. Martello must make a prima facie showing of negligence through proffer of expert testimony

showing that the care received falls below the community
standard, which he has failed to do.

The medical record in this case is uncontested.  The
factual timeline presented above reflects the following: at
intake on February 15, 2012, the BOP doctors knew of his knee
surgery.  But it was not until June 14, 2012 that doctors at a
BOP facility could be said to have become aware that he was
experiencing severe pain in his knee, possibly as the result of
the defective wire.  An x-ray was ordered, but doctors concluded
that the x-ray did not show any evidence of a broken wire from
his knee surgery.  On July 30, 2012, a physical exam revealed
physical evidence of knee problems, and the examining doctor
requested an appointment with an orthopedic specialist, a
request that was approved eleven days later.  An exam a month-
and-a-half thereafter, on September 25, revealed physical signs
of a defective wire in his knee.  Slightly more than another
month later, on November 2, Martello saw an orthopedic
specialist who diagnosed the problem and performed the procedure
to remove the wire on December 20, approximately a month-and-a-
half after his initial diagnosis.

The relevant question, as framed by the plaintiff, is
whether the amount of time Martello had to wait between
diagnosis of his knee issue and ultimate resolution of the issue
by surgery fell below the community standard of a reasonable

time to wait for such a procedure.  The plaintiff concedes that

he does not argue that any negligence or malpractice occurred:

simply that the delay between Martello's complaint of pain in

June and his surgery in December was negligent.  But Martello's

timeline is misleading.  Although he did indeed first complain

of knee pain as the result of his surgery in June, an x-ray was

read that showed no signs of a broken wire.  If Martello does

not allege negligence in diagnosis, then he cannot start his

timeline in June.  A supportable start time for any assertion of

negligence is July 30, at which point his examining doctor did

notice swelling in his knee, requested his surgery records, and

requested a consultation with an orthopedic specialist on

Martello's behalf.

     After this point, there was a progression of medical

activity for Martello approximately once every month-and-a-half.

There was a further medical consultation, request and approval

for an orthopedic examination, the orthopedic examination, and

the ultimate surgery.  Whether this time horizon between signs

of a non-life-threatening injury and its diagnosis and ultimate

correction falls below community standards is not within the

knowledge of a lay person.  The amount of time is not so

significant as to be obviously negligent.  Five months may be an

acceptable amount of time to wait for such a procedure.  It

cannot, in any event, be said that the Otisville medical staff

ignored Martello's complaints. This is not to diminish
recognition of the pain Martello may have felt, but simply to
say that medical scheduling takes time. The average lay person
— and even a judicial officer without expert opinion evidence —
has no frame of reference as to what may or may not be a
reasonable time to wait for the orthopedic surgery prescribed
for Martello.

It was incumbent upon Martello to provide expert testimony
to support a prima facie case that the amount of time he waited
for his surgery after initial diagnosis fell below community
standards. This burden is not particularly demanding because
the information being analyzed is not voluminous. An orthopedic
surgeon could simply have reviewed Martello's record to offer an
opinion whether or not the amount of time Martello waited for
his surgery would be considered within the normal range in the
community. Martello had more than sufficient opportunity to
adduce such testimony. He does not dispute any of the
underlying facts relied upon by the United States. He has
submitted insufficient testimony to support even a *prima facie*
case that the delay was negligent. Accordingly, I conclude that
a grant of summary judgment to the defendant is appropriate.

## IV. CONCLUSION

For the foregoing reasons, I GRANT the Defendant's Motion for Summary Judgment.  The Clerk shall enter judgment for the Defendant.


*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE